IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GREGORY THOMPSON, DELORES THOMPSON, and ERIC THOMPSON,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHONY FLORES, Current Operator of Value Priced Auto Phoenicians and Carbid360;<br><br>Defendant. | 8:24CV173<br><br>MEMORANDUM AND ORDER |

Plaintiffs Gregory Thompson ("Gregory"), Delores Thompson ("Delores"), and Eric Thompson ("Eric") (collectively "Plaintiffs") filed a Complaint, Filing No. 1, on May 10, 2024. Plaintiffs each moved for leave to proceed in forma pauperis ("IFP"), but the Court denied Gregory's and Delores' IFP motions without prejudice to reassertion as the motions did not comply with the terms of 28 U.S.C. § 1915, the statute authorizing proceedings in forma pauperis. *See* Filing No. 11. On June 24, 2024, Delores paid the Court's filing and administrative fees, and, thereafter, the Court denied Gregory's renewed IFP motion as moot. *See* Filing No. 24. The Court, however, granted Eric leave to proceed IFP and assessed an initial partial filing fee pursuant to the Prison Litigation Reform Act. *Id*. Thus, the Court must conduct an initial review of Plaintiffs' claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

Before conducting the initial review, the Court will address the amended complaints, Filing No. 13; Filing No. 19, and related motion, Filing No. 12, Plaintiffs filed prior to the Court's resolution of Eric's and Gregory's IFP motions.

## I. MOTION TO REDACT AND FILE AMENDED COMPLAINT

On May 24, 2024, Plaintiffs filed a "Motion to Redact the Filed Complaint and Allow This Second Complaint as the Complaint of Record" ("Motion to Amend"). Filing No. 12. Plaintiffs state that the original Complaint filed on May 10, 2024, mistakenly included comments in the side margins containing "friend's and family's telephone numbers and research materials." *Id*. at 1. Plaintiffs, thus, ask that "the original complaint be redacted and allow the attached complaint filed with this motion be allowed to take its place and be the complaint of record." *Id*. Plaintiffs submitted a signed amended complaint (hereinafter "First Amended Complaint"), Filing No. 13, with their Motion to Amend, which is essentially identical to the original Complaint except the notes and comments in the margins have been deleted and there are no attachments. *Compare* Filing No. 1 *with* Filing No. 13. Subsequently, on July 12, 2024, Plaintiffs submitted a second amended complaint (hereinafter "Second Amended Complaint"), Filing No. 19, that appears nearly identical to the First Amended Complaint save for some alterations to the spacing and section numbers and an added notation that it was "served" on Defendant. *Compare* Filing No. 13 *with* Filing No. 19.

Upon consideration, the Court will grant Plaintiffs' Motion to Amend and, liberally construing the motion, will accept the Second Amended Complaint, Filing No. 19, as the operative and controlling complaint. Plaintiffs' original Complaint was filed under restriction by the Court, meaning that remote access to the Complaint and its attachments "is restricted to case participants and court users" and "[p]ublic access to these documents is not allowed at terminals in the clerk's office." NEGenR 1.3(a)(1)(B)(ii).

Thus, Plaintiffs' request to "redact" the original Complaint is denied as moot as access to the document is already restricted as stated above.[1]

The Court now conducts an initial review of Plaintiffs' Second Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). For purposes of this initial review, the Court will consider the attachments to the original Complaint, Filing No. 1 at 41–208; Filing No. 1-1; Filing No. 1-2, as supplemental to the Second Amended Complaint.

## II. INITIAL REVIEW

### A. Summary of Second Amended Complaint

Co-Plaintiffs Gregory and Delores are husband and wife, and Eric is their son. At all times relevant, Gregory and Delores lived in Omaha, Nebraska, though they currently reside in Missouri Valley, Iowa. Filing No. 19 at 5. Eric at all times was a resident of Nebraska and is currently in the custody of the Iowa Department of Corrections ("IDOC") serving a life sentence without parole. *Id*. at 5, 7, ¶ 9. Gregory and Delores are both 79 years old, and both suffer from health issues, including Delores' early stage dementia and Gregory's cancer. *Id*. at 6, 19, ¶¶ 7, 43.

Together, Plaintiffs are the creators and co-owners of "the intellectual property and trade secrets called Paragon Dealer Services and [currently] known as ONCAR" (hereinafter "ONCAR"), *Id*. at 18, ¶ 42; *see also Id*. at 3 n.6, which is an "intellectual property development that today is capable of solving all concerns the public and dealers would have in vehicle conditioning when buying used vehicles online," *Id*. at 7, ¶ 8. Due

---

[1] For reference, the Court refers Plaintiffs to NECivR 5.3(c) and NECivR 7.5(a), which set forth the procedure for filing restricted and sealed documents in this Court.

to IDOC policy, Eric is not allowed to engage in business and cannot advise his parents with respect to ONCAR. *Id*., ¶ 9.

In 2003, Plaintiffs became friends with Dave Flores ("Dave"), another prisoner in the IDOC. In approximately 2009 or 2010, Plaintiffs also became friends with Dave's brother, Defendant Anthony Flores ("Anthony" or "Defendant"). Dave was released from prison in 2010, and Gregory and Delores enlisted Dave's assistance in finding funding for ONCAR and eventually shared their business plan with Dave. *Id*. at 9–10, ¶¶ 16, 18. Ultimately, Dave suggested that Anthony "would be better suited to deal with investors," and Gregory and Delores agreed. *Id*. at 10, ¶ 19. "Dave gave the plan to Anthony and it was stated, if Anthony liked the concept, Anthony and Dave could work together assisting [Delores] and [Gregory] on finding interested [Venture Capitalist or 'VC']/investors." *Id*. After Anthony reviewed the business plan, "[i]t was agreed that if funded and the application and website was built, when it sold or operated for a profit, net profit would be split 3-ways, equally between [Delores and Gregory], Anthony and Dave." *Id*., ¶ 20.

Soon after, Anthony informed Delores and Gregory that Dave was no longer a part of ONCAR, and "new agreements to split the net profits 50/50 with Anthony [were] made removing Dave from the business/agreements." *Id*. at 11, ¶ 22. Between January 10, 2019, and June 13, 2019,[2] Delores, Gregory, and Anthony made an agreement relevant to ONCAR "to have Anthony assist in pitching ONCAR to potential VC/Investors for the funding to build ONCAR's application and website," "that Anthony would personally pay to have ONCAR's business plan and startup evaluation done," and "when ONCAR's

---

[2] In other parts of the Second Amended Complaint, Plaintiffs allege these agreements were made in 2017. *See* Filing No. 19 at 11, 13, ¶¶ 23, 28. For purposes of this initial review, the Court will use the 2019 dates alleged by Plaintiffs in their Statement of Facts. *See Id*. at 19–21, ¶¶ 46, 56, 57, 59.

4

application sold or became operational, Anthony would receive 50% of the net profit of the remaining percentage not given to VC/investors." *Id*. at 19–20, ¶¶ 46–50. Delores, Gregory, and Anthony made up ONCAR's board of directors, and the parties "agreed on a case-by-case review to [the] possibility of giving a percentage of the business to the proper VC/Investor or Application/website designers or creators if necessary to get ONCAR Application and Website created" and "that all monies raised by VC/investors would only go toward the Development of ONCAR application/website and any other spending would be the decision performed by ONCAR's board of directors." *Id*. at 20–21, ¶¶ 54, 58–59. Delores prepared "a disclosure of confidential information with agreements" and mailed it to Anthony, but Anthony told Delores he would not sign the instruments she provided and, instead, would "wait until funded through a VC, and then hire a law firm to prepare the contracts with their agreements and disclosure Document." *Id*., ¶¶ 56–57.

Plaintiffs lost touch with Anthony in early 2020, but Anthony answered Eric's phone call on April 17, 2020, after several months with no communication. During this call, Eric learned Anthony was meeting online with "application creators, web designers, Coders and more" regarding ONCAR, and "Eric informed Anthony that his agreement with his parents was only to get Potential VC/investors lined up to fund the business not build the application and website without them." *Id*. at 15, ¶ 34. "Anthony apologized and informed Eric he was doing this with his own money" and "stated he would have [Delores] present in all future meetings." *Id*. at 16, ¶ 34. The April 17, 2020, call with Anthony "prompted Eric to call and inform his parents that Anthony is treating plaintiffs['] intellectual property and trade secrets as his own, building ONCAR's application, website with auctions,

5

market tracking, 15-minute buy bids under the guise he was using his own money." *Id.*, ¶ 35.  Gregory and Delores began investigating Anthony's activities, and on February 6, 2022, Delores learned that on June 15, 2019, Anthony received a check for $250,000 from a VC named Angel Hub for the startup of Carbid360 using Plaintiffs' intellectual property and trade secrets and created his own executive team of five people.  *Id.* at 16–17, 21, ¶¶ 36–37, 63.  Between June 15, 2019, and May 27, 2022, Anthony never informed Delores, Gregory, or Eric that he received funding for Plaintiffs' intellectual property and trade secrets known as ONCAR.  *Id.* at 22, ¶ 64.

Plaintiffs allege Anthony kept VC/investor funds from Angel Hub for $250,000 and used it for personal gain in violation of his agreements with Gregory and Delores.  *Id.*, ¶ 70.  Plaintiffs seek injunctive relief and damages for breach of contract, fraudulent inducement, and unjust enrichment.  *Id.* at 23–26.

**B. Applicable Legal Standards on Initial Review**

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'"  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  Plaintiffs must set forth enough factual allegations to "nudge[ ]

their claims across the line from conceivable to plausible," or "their complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569-70 (2007); *see also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." Topchian, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980).

**C. Discussion of Claims**

*1. Jurisdiction and Venue*

As an initial matter, Plaintiffs assert the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, commonly referred to as "diversity of citizenship" jurisdiction, over their breach of contract, fraudulent concealment, and unjust enrichment claims under Nebraska state law against Anthony. For purposes of 28 U.S.C. § 1332, "diversity of citizenship" means that "the citizenship of each plaintiff is different from the citizenship of each defendant." Ryan v. Schneider Nat'l Carriers, Inc., 263 F.3d 816, 819 (8th Cir. 2001) (citation omitted). In addition, the amount in controversy must be greater than $75,000.00 for diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a). Here,

Plaintiffs sufficiently allege the required amount in controversy and that complete diversity of citizenship exists between the parties as Plaintiffs all currently reside in Iowa and Anthony resides in Phoenix, Arizona. Filing No. 19 at 5. Plaintiffs also allege venue is proper in this Court as "all agreements and activities were done through U.S. Mail, Telephonic means, E-mails and digital text with Plaintiffs whose primary residence was in Omaha, Nebraska, throughout the issues before this court." *Id*. at 6, ¶ 6 (punctuation corrected).

*2. Breach of Contract*

Plaintiffs first allege a breach of contract claim against Anthony. "Under Nebraska law, the elements of a claim for breach of contract are: '(1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach.'" *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 757 (8th Cir. 2021) (quoting *United States v. Basin Elec. Power. Coop.*, 248 F.3d 781, 810 (8th Cir. 2001)); *see also Phipps v. Skyview Farms, Inc.*, 610 N.W.2d 723, 730 (Neb. 2000) ("In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty.").

Liberally construed, Plaintiffs allege that, in exchange for 50% of all net profits generated from ONCAR, Anthony agreed to assist Delores and Gregory in finding prospective venture capitalists/investors for ONCAR, to work with Delores and Gregory in selecting investors and venture capitalists to partner with, and, when funded, to work with Delores and Gregory to find companies suited to build ONCAR's application and website. Filing No. 19 at 24. Plaintiffs allege Anthony breached this agreement by

8

securing at least $250,000 in funding from Angel Hub using Plaintiffs' intellectual property and trade secrets, building the ONCAR application and website on his own under a different name (CARBID360), using ONCAR investor funds to pay himself and his hired executive team, and sharing Plaintiffs' trade secrets and intellectual property with his hired executive team without informing or receiving the approval of Gregory and Delores. *Id*. at 24–25. Plaintiffs further allege they were damaged by Anthony's taking of the $250,000 in funding earmarked for Plaintiffs' ONCAR application and website development. At least for purposes of initial review, the Court concludes Plaintiffs have sufficiently alleged a breach of contract claim against Anthony.

### 3. Fraudulent Concealment

In conjunction with their breach of contract claim, Plaintiffs also seek recovery against Anthony for fraudulent concealment. To state a claim for fraudulent concealment under Nebraska law, Plaintiffs must allege:

> a duty to disclose a material fact; knowledge of the fact; concealment of the fact; that the fact was not within the plaintiff's reasonable attention, observation and judgment; that defendant concealed the fact intending that plaintiffs act or refrain from acting; and that plaintiffs reasonabl[y] relied on those facts; and that plaintiffs were damaged by the action or inaction of the concealment.

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*, No. 8:17CV310, 2019 WL 3342206, at *4 (D. Neb. July 25, 2019) (citing *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 334 (Neb. 2010)).

Here, Plaintiffs allege Anthony had a duty under their agreements to inform Gregory and Delores when he found interested investors; Anthony lied and did not tell Plaintiffs about receiving funding from Angel Hub; Anthony changed the name of the company from ONCAR to CARBID360 to prevent Plaintiffs from knowing what funding

9

and/or investors he obtained; Gregory and Delores placed Anthony in a position of trust, relied on him due to their advancing age and health issues, and believed Anthony had not received any funding or found any interested investors; and Plaintiffs were damaged in the amount of $250,000 that would have been invested in ONCAR but for Anthony's concealment. Filing No. 19 at 25–26. These facts, when liberally construed, state a plausible fraudulent concealment claim, and such claim may proceed.

4. *Unjust Enrichment*

Finally, and as an alternative theory of recovery, Plaintiffs assert an unjust enrichment claim. "To recover on a claim for unjust enrichment in Nebraska, 'the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff.'" *Colombo Candy & Tobacco Wholesale Co. v. Ameristar Casino Council Bluffs, Inc.*, 972 F. Supp. 2d 1103, 1110 (D. Neb. 2013) (quoting *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 302 (Neb. 2006)).

Plaintiffs allege Anthony received $250,000 in funding from Angel Hub investment firm, he kept all the funds without informing Delores and Gregory, and such funds were earmarked for the development of Plaintiffs' ONCAR intellectual property and trade secrets into a working application and website. Based on the facts alleged, the Court finds Plaintiffs' have stated a plausible unjust enrichment claim for purposes of initial review.

### III. OTHER PENDING MOTIONS

**A. Motion for Preliminary Injunction and Temporary Restraining Order**

With their original Complaint, Plaintiffs filed a Motion for Preliminary Injunction and Temporary Restraining Order.  Filing No. 5.  Based on the allegations of their verified Complaint, Plaintiffs contend that Anthony has received much more than $250,000 in funding to build Plaintiffs' application and website because Anthony told Dave, in response to Dave's request that Anthony sign over CARBID360 to Plaintiffs, that CARBID360 is $1.5 million in debt.  Plaintiffs are concerned that Anthony would not sign over CARBID360 because he may be trying to sell the company, which contains portions of Plaintiffs' ONCAR intellectual property and trade secrets.  Plaintiffs, thus, seek preliminary injunctive relief directing Anthony to "[g]ive 100% control and ownership" of CARBID360 to Plaintiffs, prohibiting Anthony from selling CARBID360 or disseminating any of Plaintiffs' intellectual property or trade secrets used in CARBID360, and barring Anthony "from signing any or all of his assets over to anyone else in the community to prevent Plaintiffs from finding his assets in the legal process."  *Id.* at 2, ¶ 8.

Liberally construed, Plaintiffs seek a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b), which allows the Court to issue a temporary restraining order without notice to avoid "immediate and irreparable injury, loss, or damage" to the moving party and only if "the movant[] . . . certifies in writing any efforts made to give notice and the reasons why it should not be required."  Preliminary injunctive relief is an extraordinary remedy never awarded as of right.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Here, Plaintiffs believe they are at risk of losing control of their intellectual property and trade secrets based on their speculation that Anthony may be attempting to sell CARBID360, which would cause them to "suffer irreparable harm as once [the confidential

information is] out in the public it would be impossible to know who received it and or calculate the damage Anthony caused." Filing No. 5 at 1–2, ¶ 7. However, "[s]peculative harm does not support a preliminary injunction." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012). Moreover, the allegations in Plaintiffs' verified pleading show that Anthony has been using Plaintiffs' intellectual property and trade secrets in operating CARBID360 since 2019. The passage of five years during which Defendant has been using Plaintiffs' intellectual property and trade secrets does not suggest that any harm Plaintiffs' face is immediate or imminent, but rather has already occurred. See *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) (irreparable harm factor weighed against preliminary injunction because the harm "to a large extent, ha[d] already occurred.").

Accordingly, upon careful consideration, the Court concludes Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order should be denied without prejudice to reassertion because Plaintiffs have failed to establish that they face immediate and irreparable injury.

**B.  Motions regarding Summons and Notice of Service**

When Plaintiffs filed their original Complaint on May 10, 2024, Plaintiffs also filed a document captioned "Summons," which the Court filed as a motion for summons, but on closer review appears to be a copy of Plaintiffs' request for waiver of service to Defendant (hereinafter "Waiver Request"). Filing No. 7. Subsequently, on June 10, 2024, Plaintiffs filed a Motion for Court to Take Notice of Service of Summons (hereinafter "Motion for Notice"), in which Plaintiffs ask the Court take notice that, on June 3, 2024, they "mailed a signed copy of the complaint attached to the Summons, as set forth in the

Federal Rules of Civil Procedure Rule 4 with the Waiver of The Service Of Summons for Defendant to sign within . . . 60 days (Defendant's due date August 02, 2024) to avoid additional expenses for service." Filing No. 15. Thereafter, on July 12, 2024, Plaintiffs filed three copies of summons addressed to Defendant, which the Court docketed as a Motion for Summons. Filing No. 21. In the Motion for Summons, Plaintiffs request that the Clerk of the Court sign the summons, place the Court's seal upon them, and return the summons forms to Eric. *Id*. at 4. On September 3, 2024, Plaintiffs filed a "Motion for Court to Return Summons with Seal to be Served on Defendant" (hereinafter "Motion for Return of Summons"), Filing No. 23, essentially asking the Court to issue the summons requested in the Motion for Summons and to note the effects of the Court's delay in not issuing the signed, sealed summons upon Plaintiffs' initial request.

As the Court has determined that this matter may proceed to service of process, the Court will grant Plaintiffs' Motion for Summons, Filing No. 21, and Motion for Return of Summons, Filing No. 23, and direct the Clerk to issue signed summons forms to Plaintiffs as they request.[3] The Court will also grant Plaintiff's Motion for Notice, Filing No. 15, to the extent that the Court will take notice of the contents of Plaintiffs' Motion for Notice and that it is contained within the records of this case. To the extent Plaintiffs' Waiver of Service, Filing No. 7, can be construed as a motion for summons, it is denied as moot as the Court has granted Plaintiffs' later-filed Motion for Summons, Filing No. 21.

## C. Motion for Counsel

With their original Complaint, Plaintiffs also filed a motion seeking the appointment of counsel. Filing No. 6. "There is no constitutional or statutory right to appointed counsel

---

[3] In conjunction with granting Plaintiffs' Motion for Summons, the Court, on its own motion, will extend the deadline for Plaintiffs to complete service of process.

13

in civil cases." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011). "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 F. App'x 3, 4 (8th Cir. 2021) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)). Moreover, "[t]he appointment of counsel 'should be given serious consideration . . . if the plaintiff has not alleged a frivolous or malicious claim' and the pleadings state a prima facie case." *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992) (quoting *In re Lane*, 801 F.2d 1040, 1043 (8th Cir.1986) (internal quotation omitted)).

Here, the Court has concluded that Plaintiffs have alleged sufficient facts to state claims for relief under breach of contract, fraudulent concealment, and unjust enrichment theories. Plaintiffs represent in their motion that they have attempted to find representation by contacting numerous law firms and attorneys "but none have taken them serious[ly] or seemed to care. Plaintiffs have not found a firm willing to assist them on contingency [and the] few firms that actually responded required money up front which Plaintiffs do not have . . . ." Filing No. 6 at 2. Due to their age and health issues, Delores and Gregory state they "are unable to keep track of who they talk to or remember what it's about on bad days, making finding counsel an impossible task." *Id*. Eric's incarceration also prevents him from assisting Delores and Gregory with anything other than "typ[ing] documents for this suit[,] but [he] has no ability to access Nebraska cases

14

or statutes and only gets an hour per day to do legal research." *Id*. Given Plaintiffs' statements in their pleadings and motion, it is evident that Plaintiffs' ability to present their claims, at least past the initial review stage, is hindered due to Delores' and Gregory's physical and cognitive health issues, as well as Eric's incarceration and Plaintiffs' physical separation from each other. Accordingly, the Court concludes that Plaintiffs and the Court would benefit from the appointment of counsel at this stage in the matter. Counsel is appointed as set forth below.

## IV. CONCLUSION

Upon initial review, the Court concludes the Second Amended Complaint, which is Plaintiffs' operative pleading, alleges plausible claims under Nebraska law for breach of contract, fraudulent concealment, and unjust enrichment. Accordingly, this matter will proceed to service of process against Defendant, and the Court will appoint counsel to assist Plaintiffs with the prosecution of this case. The Court cautions Plaintiffs, however, that allowing their claims to proceed to service of process is not a determination of the merits of their claims or potential defenses to them.

IT IS THEREFORE ORDERED that:

1. Plaintiffs' Motion to Amend, Filing No. 12, is granted in part to the extent that Plaintiffs are given leave to amend their complaint and the Second Amended Complaint, Filing No. 19, is deemed the operative and controlling complaint. The motion is denied as moot to the extent Plaintiffs seek redaction of the original Complaint for the reasons stated above.

2. This case shall proceed to service of process as to Plaintiffs' claims alleged in the Second Amended Complaint.

3. Plaintiffs' Motion for Summons, Filing No. 21, Motion for Return of Summons, Filing No. 23, and Motion for Notice, Filing No. 15, are granted consistent with this Memorandum and Order. Plaintiffs' Waiver Request, Filing No. 7, construed as a motion for summons, is denied as moot.

4. The Clerk of the Court is directed to complete and issue three summons forms for **Defendant Anthony Flores at 21836 N. 23 Ave., Phoenix, Arizona 85027**. The Clerk of the Court is further directed to send the completed summons forms to Plaintiff Eric Thompson per his request in Plaintiffs' Motion for Summons, Filing No. 21 at 4.

5. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiffs are granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

6. The Clerk of Court is directed to set a case management deadline using the following text: **December 4, 2024**: deadline for service of process.

7. Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order, Filing No. 5, is denied without prejudice to reassertion.

8. Plaintiff's motion for appointment of counsel, Filing No. 6, is granted.

9. With thanks for accepting the appointment, Joshua D. Barber and Barber & Barber, P.C., L.L.O., is hereby appointed to represent Plaintiffs Gregory, Delores, and Eric Thompson in this matter.[4]

10. Joshua D. Barber is directed to promptly enter his appearance as counsel in this case.

---

[4] The undersigned has been authorized by the Chief Judge to appoint counsel pursuant to the Amended Plans for the Administration of the Federal Practice Fund and the Federal Practice Committee.

11. Upon entry of counsel's appearance in CM/ECF, the Clerk of Court shall immediately pay from the Federal Practice Fund the sum of $1,000 to Barber & Barber, P.C., L.L.O.

12. A second and last installment of $1,000 shall become due and payable to Barber & Barber, P.C., L.L.O., upon the entry of judgment or other closing documents in the case.

13. Subject to the prior approval of the Court, counsel may incur reasonable expenses when representing Plaintiffs in accordance with the Amended Plans for the Administration of the Federal Practice Fund and the Federal Practice Committee. *See also* NEGenR 1.7(g) and NECivR 54.3-54.4.

14. Should Plaintiffs succeed, and counsel be awarded attorney fees and expenses that exceed $2,000 plus expenses, counsel shall reimburse the Federal Practice Fund for the fees and expenses paid from the fund.

15. Counsel for Plaintiffs is appointed to assist Plaintiffs with the prosecution of their claims and through trial if this case should proceed to trial. The appointment will not extend to any appeal after trial.

16. The Clerk of Court is directed to send a copy of this Memorandum and Order to Plaintiffs and Plaintiffs' appointed counsel.

17. Because this case is proceeding to service of process and counsel has been appointed, this case is removed from the pro se docket at the direction of the Court. The Clerk's office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 5th day of September, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge